54 So.2d 179 (1951)
STATE ex rel. BYER et al.
v.
WILLARD.
Supreme Court of Florida, en Banc.
August 24, 1951.
Rehearing Denied October 9, 1951.
Whitaker Brothers, Tampa, and Jack Kehoe, Miami, for relators.
Richard W. Ervin, Atty. Gen., Reeves Bowen, Asst. Atty. Gen., Robert R. Taylor, County Sol. for Dade County and Robert H. Givens, Jr., Asst. County Sol., Miami, for respondent.
SEBRING, Chief Justice.
This is an original proceeding in prohibition in which the relators seek to prohibit the Judge of the Criminal Court of Record of Dade County, Florida, from proceeding with the trial of a criminal case pending against them upon an information *180 charging them with violation of the gambling laws of the State.
The material facts shown by the record are as follows: One Harvey was employed by the grand jury of Dade County, Florida, to investigate and produce evidence of violations of the gambling laws of the State in Dade County. Having reason to believe that the relators were engaged in operating gambling houses at various locations in the County, Harvey applied for and secured from the Circuit Court of Dade County a search warrant authorizing him, as an elisor, to enter the offices of the relators located in an office building not owned by them or used as a place for the conduct of gambling operations, and to seize their private books and records "for use as evidence * * * before the Dade County Grand Jury and in any prosecutions which [might] follow as a result of the investigations * * * by the * * * Grand Jury." Armed with the search warrant, Harvey entered the offices described in the search warrant and seized the said books and records belonging to the relators. Subsequently the books and records were delivered to the grand jury "and the information therein contained was made use of against each of these relators by said grand jury in said investigation and in finding and returning" an indictment against the relators charging them with certain violations of the State gambling laws.
After the return of the indictment the County Solicitor of Dade County filed in the Criminal Court of Record of Dade County an information charging the relators with the commission of the identical offenses alleged in the indictment returned by the grand jury. Attached to the information was the oath of the County Solicitor which reads: "Personally appeared before me, Robt. R. Taylor, County Solicitor for Dade County, Florida, who being first duly sworn, says that the allegations as set forth in the foregoing Information are based upon an Indictment duly and regularly returned by the Grand Jury of the County of Dade and that this Information is filed by authority of Section 32.18, [sub]-section (4) of the Florida Statutes of 1941 [as amended] and that no witnesses have been sworn and testified before this affiant or any Assistant County Solicitor of Dade County, Florida."
The relators moved to quash the information on the ground that it was bottomed upon an indictment based upon illegally obtained evidence, and that by the seizure of such evidence and its use by the grand jury the relators had been compelled to give evidence against themselves, in violation of their constitutional privilege against self-incrimination and hence were entitled to immunization from prosecution, under section 932.29, Florida Statutes 1941, F.S.A., which provides: "No person shall be excused from attending and testifying, or producing any book, paper or other document before any court upon any investigation, proceeding or trial, for a violation of any of the statutes of this state against * * * gaming or gambling * * * upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime * * * but no person shall be prosecuted * * * for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding."
The motion to quash the information was denied, and the relators thereupon instituted this prohibition proceeding; assigning as grounds for the issuance of a writ of prohibition the same grounds as were urged in the motion to quash the information. The question now before us for decision is whether the trial court should be prohibited from trying the relators upon the criminal information bottomed solely upon the indictment returned by the grand jury, where the grand jury, in finding the indictment, made use of evidence obtained from an examination of relators' private books and records that had been seized under a search warrant for evidential purposes only.
The answer to the question depends upon whether the use of the evidence obtained by means of the search warrant amounted, in legal effect, to compelling the relators to give evidence against themselves, within the *181 meaning, and in violation, of Section 12, Declaration of Rights, Florida Constitution, F.S.A., which provides, so far as the same is material here, that "no person shall be * * * compelled in any criminal case to be a witness against himself * *." If the relators have been compelled to be witnesses against themselves as to matters upon which the indictment was based, they are entitled to immunization from prosecution by virtue of the provisions of section 932.29, supra.
It appears to us that the decision rendered by the Supreme Court of the United States in the leading case of Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 265, 65 L.Ed. 647, on a similar set of facts, requires that this question be answered in the affirmative. From the opinion in the Gouled case it is shown that one Gouled was jointly indicted with two other defendants upon a charge of conspiracy to defraud the Federal Government and with having fraudulently used the mails to promote such conspiracy. During the course of the trial upon the charge the trial judge admitted in evidence, over the objection of the defendant, certain private papers taken from Gouled's office under a search warrant, that had been seized for use as evidence against him. Gouled was convicted of the charge and thereupon prosecuted error from the Circuit Court of Appeals, which in turn, certified to the Supreme Court of the United States certain questions for decision. The pivotal questions on the appeal were: (1) whether papers of no pecuniary value but possessing evidential value against persons presently suspected and subsequently indicted for crime were seized and taken in violation of the Fourth Amendment to the Federal Constitution, which forbids unreasonable searches and seizures, where they were taken under a search warrant from the house or office of the person suspected, and (2) whether the admission in evidence of such papers, over the objection of the defendant, amounted to a violation of the Fifth Amendment, which contains the same provision as is contained in section 12 of our Declaration of Rights, that "no person shall be * * * compelled in any criminal case to be a witness against himself".
As to the first question the Court held that papers taken under the circumstances outlined in the question were seized in violation of the Fourth Amendment of the Federal Constitution; the Court stating that search warrants "may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding, but * * * may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken."
On the question whether the admission in evidence of such papers amounted to a violation of the Fifth Amendment, the Court held "The same papers being involved, the answer to this question must be in the affirmative, for, they having been seized in an unconstitutional search, to permit them to be used in evidence would be, in effect * * * to compel the defendant to become a witness against himself."
In our opinion the holding in Gouled v. United States is so strongly persuasive as to be decisive of the question now before us. See also 58 Am.Jur. 47, Witnesses section 41, and cases cited. It has long been settled that the provision in our Declaration of Rights that "no person shall be * * * compelled in any criminal case to be a witness against himself" must be broadly and liberally construed in order to secure the protection designed to be accomplished by it; and that to this end no technical limitations should be placed upon the terms employed. Our constitutional provision is the same as that found in the Constitution of the United States, and of the constitutions of many of the states; and the many cases from other jurisdictions on the point involved clearly demonstrate that a broad and liberal construction of such provisions should obtain *182 in furtherance of the right sought to be secured. See Ex parte Senior, 37 Fla. 1, 19 So. 652, 32 L.R.A. 133.
By the weight of authority the privilege against self-incrimination extends to inculpatory documents and an accused cannot be required to produce a document for use as evidence against himself that is not in his possession unlawfully. Wharton's Criminal Evidence, 11th Ed., Vol. III, section 1142. Since this is true, is not the seizure under search warrant of a man's private papers for the sole purpose of finding sufficient evidence therein upon which to predicate an indictment, and the subsequent use of such papers as evidence to prove the charge contained in the indictment, the equivalent of compelling such person to produce private papers for the purpose? It seems to us that the answer is obvious. Whether a person be compelled to supply evidence against himself by word of mouth or by bringing in documents or records tending to incriminate him, or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers, the result is the same to one accused of crime. In either case such person is compelled to be an unwilling witness against himself in a criminal proceeding; there being no essential difference, in principle, in forcing an accused to speak against himself or produce records, and in forcing, by an unlawful search the contents of his home or premises to give evidence against him. In either case the constitutional guaranty against one's being compelled to give evidence against himself is violated. Gouled v. United States, supra, and cases cited therein. Our law protects against such unwarranted encroachments upon the personal rights of the citizen; except in those classes of cases enumerated in section 932.29, and as to them, the provision is that while such person will not be excused from testifying or producing books, papers or documents he shall not be prosecuted "for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding."
There is no suggestion in the transcript that the books and records seized under the search warrant were contraband and not the proper subject of ownership, or that they were of that class required by law to be kept by any particular organization, occupation or business impressed with a public interest and hence subject to inspection under the police power. Compare 70 C.J. 722, Witnesses section 876. Indeed, the entire record leads to the contrary conclusion, that they were wholly private and harmless in character, were lawfully possessed, and were not being used as instrumentalities in the perpetration of frauds or crimes. By means of court process these private books and records were seized for use as evidence before the grand jury, and from the evidence thus obtained the grand jury returned an indictment against the relators for violation of the gambling laws. The use of this evidence before the grand jury was the use of evidence in a "criminal case", within the meaning of section 932.29, Florida Statutes 1941, F.S.A., granting immunization from prosecution. See State ex rel. Hemmings v. Coleman, 137 Fla. 80, 187 So. 793. The County Solicitor of Dade County bottomed the criminal charge he subsequently lodged against the relators solely and squarely upon the averments contained in an indictment that had been returned by the grand jury upon evidence obtained from the books and records. Therefore, the County Solicitor bottomed the charge in the information upon evidence extracted from the relators under compulsion, within the meaning of the Constitutional provision which protects a person against involuntary self-incrimination. And since section 932.29, supra, prescribes that where a person has been compelled to give evidence under such circumstances the fact of his giving it will immunize him from indictment, prosecution, or punishment for the offense concerning which it was given, it follows that a person from whom evidence has thus been obtained cannot be tried or punished on an information predicated on such evidence, and consequently *183 that prohibition will lie to restrain the trial court from an excess exercise of jurisdiction. See State ex rel. Marshall v. Petteway, 121 Fla. 822, 164 So. 872.
It follows from the conclusion reached that the Criminal Court of Dade County, Florida, should be prohibited from trying the relators on the criminal information involved; that the answer or return to the rule nisi in prohibition is legally insufficient; that the respondent's motion to quash the rule should be denied; and that a rule absolute in prohibition should issue.
It is so ordered.
TERRELL, THOMAS, ADAMS and HOBSON, JJ., concur.
CHAPMAN and ROBERTS, JJ., not participating.