PER CURIAM.
The defendant, Rene Gerardo, was informed against for the crime of intentionally receiving, retaining, disposing of, or aiding in the concealment of, stolen property, to wit: miscellaneous jewelry, without the consent of the owner, knowing that it had been stolen or under such circumstances as would induce a reasonable man to believe that the property had been stolen, all in violation of Section 812.031(1), Florida Statutes (1975). The defendant pled not guilty and moved to dismiss the information. The motion was denied. After a jury trial, a guilty verdict was returned and judgment and sentence were entered. This appeal is from that judgment.
The defendant was the president, stockholder and custodian of the books and records of a corporation known as K & G Jewelry, Inc., a Florida corporation, located in the Seybold Building in downtown Miami, Florida. K & G Jewelry, Inc., as its name indicates, sold jewelry to the general public.
Sonia Miller was the president of a corporation known as Sonny Miller, Inc., and at one time operated a jewelry sales and antique business at 6716 Collins Avenue, Miami Beach. Late on the last night in January or the very early morning of the first of February, 1976, Mrs. Miller was attempting to open and operate a jewelry and antique business. At that time, she had some $240,-000.00 of jewelry in boxes which had been placed into the area where she intended to open her new business. She left the jewelry in the store with the lights on and, with her daughter, went next door for something to eat. When she and her daughter returned at approximately 1:00 a.m.,'or shortly thereafter, on February 1, 1976, they found that the lock had been pulled off the front door, the door was open and, of course, the jewelry was gone. Mrs. Miller reported the theft.
*1223 Later, Mrs. Miller was in downtown Miami in the Seybold Building at K & G Jewelry. There, in the window, she saw an opal mosaic pin on a black velvet bust. She immediately recognized it as being a pendant that was among the jewelry stolen from her. She and a friend, Mr. Krum-holtz, went to K & G Jewelry and Mr. Krumholtz spoke to the defendant, introducing Mrs. Miller and advising the defendant that Mrs. Miller had seen some stolen jewelry in his window and would he please talk to her. Krumholtz left; shortly thereafter, the defendant said he would not talk to Mrs. Miller at that time and that she would have to come back later. Mrs. Miller then went downstairs to call the police. She testified that she was gone only about five minutes and that when she returned, the pendant was no longer in the window. She saw that the bust was still there but there was no jewelry on it. Later, Mrs. Miller and a policeman went back to K & G Jewelry, at which time the defendant denied knowing anything about the pendant. The police officer reminded him that it had been on a bust in his jewelry store window, but he insisted that he knew nothing about it. The police officer asked the defendant if anybody in the shop had sold the pendant and the defendant stated that he did not know, but inquired of two of his employees concerning whether or not they had sold the pendent out of the window. Both employees indicated they had not. A search warrant was obtained to search the K & G Jewelry premises. Mrs. Miller and the police officer then returned to K & G Jewelry where Mrs. Miller identified numerous pieces of jewelry that she said belonged to her and that were taken in the robbery of February 1, 1976.
Prior to the trial, on May 3, 1976, the State issued a witness subpoena duces te-cum directed to the Custodian of Records of K & G Jewelry, Inc., which defendant alleges was served personally upon him. On May 13, 1976, the return day of the subpoena, the assistant state attorney was advised by counsel for the defendant that he would not honor the subpoena and, on May 14th, the State filed a motion to compel production of the records, pursuant to the witness subpoena duces tecum served on the defendant. On May 19th, the defendant appeared before an assistant state attorney and produced the books and records as required by the subpoena duces tecum. By way of a motion to dismiss, the defendant contended that by complying with the subpoena he had been immunized from prosecution through Section 914.04, Florida Statutes (1975), and the applicable decisions construing that statute. The motion was denied.
At trial, evidence was presented by the State showing that the persons from whom the defendant said he had purchased the stolen items did not, in fact, sell them.
Defendant’s first two points are argued together. The first urges that the court erred in denying the motion to dismiss the information, and the second urges that the court erred in denying the motion for judgment of acquittal made at the conclusion of the State’s case and in failing to grant the defendant a new trial. The burden of the argument under these points is that the purpose of the subpoena, as reflected by the record, was to obtain evidence against the defendant personally, and because the defendant was the person required to produce the papers on which some of the evidence for his prosecution was based, he was, therefore, immunized by the provisions of Section 914.04, Florida Statutes (1975),[1] from the charges brought against him.
*1224 We think that this contention is adequately refuted by the language of this court in State v. Deems, 334 So.2d 829 (Fla.3d DCA 1976), where we stated:
“Section 914.04, Fla.Stat., is designed to assure an individual’s constitutional privilege against self incrimination where such individual is subpoenaed or compelled to produce his own personal records. State ex rel. Byer v. Willard, Fla. 1951, 54 So.2d 179. However, a requirement for production of records of the corporation of which Deems was president would not violate Deems’ privilege against self incrimination and would not prevent prosecution under the statute. Davis v. State, Fla.App.1973, 281 So.2d 551; 79 C.J.S. Searches and Seizures § 37.”
It should be noted that defendant’s contention concerns statutory immunization and not any requirement that he give testimony against himself. The constitutional issue was not raised in the trial court and is not included here in the points on appeal. Nevertheless, we refer to the following cases as an indication that although the statutory privilege may attach to a defendant required to testify under subpoena duc-es tecum, the constitutional right must be asserted at the time of the taking of the testimony and if not asserted, the constitutional ground is not the basis for the exclusion at trial. See State v. Perkins, 349 So.2d 802 (Fla.2d DCA 1977); State v. Newsome, 349 So.2d 771 (Fla.2d DCA (1977); and Orosz v. State, 334 So.2d 26 (Fla.1st DCA 1976).
Defendant’s third and fourth points are argued together. They claim an insufficiency in the evidence. The burden of this argument is that there was no showing that the defendant knew or should have known that the items he retained in his store and offered for sale were stolen. Our review of the record convinces us that this position is untenable in that Defendant’s guilty knowledge is inescapable from his unexplained possession of recently stolen goods, the false statements given concerning the manner of acquisition, the futile attempts at concealment and the contradictory statements of fact given concerning the disposition of some of the goods which were observed but not recovered. It is well established that the possession of stolen property, together with other incriminating circumstances, is sufficient for a conviction of this crime. See State v. Graham, 238 So.2d 618 (Fla.1970).
The judgment and sentence are affirmed.

. “914.04 Witnesses; person not excused from testifying in certain prosecutions on ground testimony might incriminate him; immunity from prosecution. — No person, having been duly served with a subpoena or subpoena duc-es tecum, shall be excused from attending and testifying or producing any book, paper, or other document before any court having felony trial jurisdiction, grand jury, or state attorney, upon investigation, proceeding, or trial for a violation of any of the criminal statutes of this state upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty of forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing *1224 concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding.”