444 So.2d 20 (1983)
STATE of Florida, Appellant,
v.
Scott P. REEVES, Appellee.
No. 82-962.
District Court of Appeal of Florida, Second District.
October 7, 1983.
Rehearing Denied January 20, 1984.
Jim Smith, Atty. Gen., Tallahassee, Theda James Davis and Katherine Blanco, Asst. Attys. Gen., Tampa, for appellant.
Davis G. Anderson, Jr., Tampa, for appellee.
HOBSON, Acting Chief Judge.
The state appeals an order granting Scott Reeves' motion to dismiss an information with prejudice. The motion was granted on the apparent ground that, due to improper action on the state's part, a confidential informant-eyewitness who participated in the alleged crime is choosing to invoke the Fifth Amendment privilege against self-incrimination rather than testify in the case. We reverse and remand.
*21 The state filed an information charging Reeves and one Dennis Gonzalez with trafficking in methaqualone in violation of sections 777.011 and 893.135(1)(e), Florida Statutes (1981). Hillsborough County Sheriff's Office Detective Donald Roman prepared a criminal report affidavit stating that Reeves and Gonzalez had delivered 5,000 methaqualone tablets to him on January 20, 1981, in exchange for $6,250.
Reeves filed a motion requesting the state to disclose the identity of a particular confidential informant (CI). He alleged in the motion that disclosure of the CI's identity would be "relevant and helpful" to his defense; that the CI was an "active participant in the alleged offense"; and that, other than Officer Roman, the CI was the only witness to the alleged drug transaction. Upon the state's application, the trial court issued a writ of habeas corpus ad testificandum commanding the release of the CI, one Manuel Paleaz, from the Zephyrhills Correctional Institute.
Paleaz, who has not been granted immunity by the state in this case, was produced by the state at an in camera proceeding. The following conversation transpired at this hearing:
THE COURT: ... Mr. Eberhart [Assistant State Attorney], it is not your intention to call Manuel Paleaz as a witness in this matter?
MR. EBERHART: No, sir, it is not.
THE COURT: He was the confident [sic] informant involved in the arrest in this case against Mr. Reeves but he refuses at this time to testify?
MR. EBERHART: That is correct, Your Honor.
THE COURT: Mr. Moore [Reeves' counsel], you want to add anything to it?
MR. MOORE: Your Honor, I think the record should reflect here the confidential informant refuses to testify based upon unkept promises made to him based upon the fact that he was promised by the detective who was working with him that he would not be disclosed nor be required to testify, and consequently, I also am deprived of the use of this man as a witness for any exculpatory information he might have as a result of misconduct on the part of the State.
Perhaps it would be advantageous at this time to bring him in here and see if he will address those issues on the record.
THE COURT: He is also raising the issue of Fifth Amendment rights which the State is not in the position to grant him in other jurisdictions and that would hold true for yourself. If you called him as a witness he would have that same right to do. If you want to call him in here and have him exercise his Fifth Amendment rights I think he would be in a position to do so.
MR. MOORE: I would like to do that, Your Honor.
THE COURT: Bring him in, please.
(Mr. Paleaz enters the chambers.)
THE COURT: Mr. Ficarrotta, you representing Mr. Paleaz in regard to this matter?
MR. FICARROTTA: For the record, I do represent him.
THE COURT: We are here in the interest of Scott Reeves. It is a trafficking in methaqualone case, Case Number 81-575. Mr. Paleaz was to be called as a witness by the State. It is my understanding that he does not wish to testify.
MR. EBERHART: That is correct, Your Honor.
THE COURT: Is that correct, Mr. Paleaz?
MR. PALEAZ: Yes, I don't want to testify.
MR. MOORE: Your Honor, may I inquire?
THE COURT: Yes, sir.
MR. MOORE: Is your reluctance to testify based in part upon promises made to you by Detective Roman to the effect that you work with them you would never have to testify and your identity would never be disclosed?
MR. FICARROTTA: May I have a minute, Judge?
THE COURT: All right.

*22 (Mr. Ficarrotta confers with Mr. Paleaz off the record.)
PALEAZ: I would rather not answer any questions. I would rather rest on the Fifth Amendment.
MR. MOORE: Thank you very much.
THE COURT: All right, sir. That is all we need from you.
(The hearing was concluded.)
Thereafter, Gaspar Ficarrotta, Paleaz' appointed counsel, was deposed. Ficarrotta testified that he had met with Paleaz and Officer Roman at the county jail several weeks before the date of the in camera hearing. Ficarrotta stated that at this meeting Officer Roman and Paleaz had discussed Officer Roman's promise of "some years back" that if Paleaz worked as a CI his identity would not be disclosed and he would not be required to testify. According to Ficarrotta, Officer Roman "concurred that that was the agreement" and "that if it came down to testifying or dropping of the case that the detective [Roman] would drop the cases." When asked if this was a factor in Paleaz' decision to invoke the Fifth Amendment, Ficarrotta, asserting the attorney-client privilege, refused to answer.
Reeves subsequently filed his motion to dismiss the information with prejudice, claiming that Paleaz' decision to raise the Fifth Amendment rather than testify for the state or the defense had resulted directly from Officer Roman's "improper and illegal" inducement. He asserted in an accompanying memorandum of law that Officer Roman's promise, imputed to the state, had deprived him of his due process right "to face and confront all witnesses against him, and ... [to have] access to testimony and information necessary to the presentation of his defense." The state filed a response to the motion which denied Reeves' claim that Officer Roman's promise was the reason for Paleaz' decision to assert the Fifth Amendment. It also said therein that it was not obliged to produce a witness to testify for the prosecution. Further, it contended in its reply that a dismissal would be improper inasmuch as Reeves had not demonstrated that Paleaz would testify in a material manner about a specific defense.[1]
The court below held a brief hearing on Reeves' motion to dismiss. The state submitted at this hearing that Paleaz' actual reason for refusing to testify was a fear for his personal safety. The court concluded the hearing by ruling in favor of the motion without comment. Thereafter, it rendered a summary order granting the motion.
On appeal, the state essentially raises the same arguments which it presented in response to Reeves' motion to dismiss. Meanwhile, Reeves again maintains that the state, through Officer Roman's promise to Paleaz, deprived him of due process of law.
Given the above-quoted portion of Reeves' memorandum of law which he submitted below in support of his motion to dismiss, his due process claim seemingly stems mainly from the confrontation and compulsory process clauses of both the Sixth Amendment to the federal constitution and Article I, Section XVI, of the 1968 Florida Constitution. Article I, Section XVI, provides that "in all criminal prosecutions the accused ... shall have the right[s] to have compulsory process for witnesses, [and] to confront at trial adverse witnesses... ." Likewise, the Sixth Amendment guarantees every criminal accused the right "to be confronted with the witnesses against him" and the right "to have compulsory process for obtaining witnesses in his favor... ." These particular Sixth Amendment rights are fundamental in nature and obligatory on the states under the due process clause of the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (right of confrontation); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 *23 L.Ed.2d 1019 (1967) (right to compulsory process).
Reeves' apparent contention that the state deprived him of his right under the confrontation clauses of both constitutions to challenge Paleaz is devoid of merit. The state indicated at the in camera hearing that it will not call Paleaz to testify as a witness for the prosecution. Although Reeves thinks otherwise, a criminal defendant does not have any right under the confrontation clause of the federal constitution to compel a witness to testify for the state so that he may confront that witness. Cooper v. California, 386 U.S. 58, 62, n. 2, 87 S.Ct. 788, 791, n. 2, 17 L.Ed.2d 730, 734, n. 2 (1967); McCray v. Illinois, 386 U.S. 300, 313-14, 87 S.Ct. 1056, 1064, 18 L.Ed.2d 62, 72 (1967). Cf. United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193, 1202 (1982) ("[T]he Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him `compulsory process for obtaining witnesses in his favor.' U.S. Const., Amdt. 6 [emphasis added].") The terms of Article I, Section XVI, of our state constitution, show that the same principle holds true under our state constitution. Thus, irrespective of any improper conduct on the state's part, Reeves' complaint on this score is invalid.
Reeves' converse argument that the state deprived him of his right to have compulsory process for obtaining a witness in his favor requires greater study. However, we must in the end reject this argument too, for the reason that Reeves failed to offer a plausible explanation below of how Paleaz' testimony would have been both favorable and material to his defense.
Although not citing any case law in support of his position, Reeves asserts that a credible showing of materiality and favorability as to a witness' testimony is not necessitated in a situation such as that before us. But a reading of various decisions of the United States Supreme Court dealing with purported due process violations occurring at the pretrial stage in the area of a defendant's organic right to access to evidence and testimony tends to suggest otherwise.
In the recent case of Valenzuela-Bernal, the respondent was indicted for transporting one Romero-Morales in violation of a federal statute prohibiting the knowing transportation of an illegal alien. In addition to Romero-Morales, two other illegal aliens were passengers in the car being driven by the respondent when the four were apprehended together by immigration authorities. Immigration officials later deported the two other illegal aliens before the respondent had an opportunity to interview them to determine whether they could aid in his defense. The respondent filed a motion to dismiss the indictment, maintaining that the government's deportation of these two passengers violated his rights to due process of law and to compulsory process. The federal district court denied the motion, and the respondent was thereafter tried, convicted and sentenced. The federal court of appeals reversed. However, the Supreme Court reversed the court of appeal's decision, holding that, in order to demonstrate a violation of his rights to due process of law and to compulsory process, the respondent needed to offer some plausible explanation of how the two deported witnesses would have provided assistance favorable and material to his defense.
Admittedly, Valenzuela-Bernal did not involve an allegation of bad faith on the government's part, as does this case. However, several of the Supreme Court's earlier cases in this area strongly intimate that, regardless of whether bad faith conduct on the state's part results in a pretrial suppression or loss of evidence or testimony, such conduct will not amount to a due process of law violation unless there is at least a showing by the defense that such evidence was material and favorable to the defense or that its loss or suppression prejudiced the defense. See, e.g., Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (held "that the suppression by the prosecution of evidence favorable *24 to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196, L.Ed.2d at 218 [emphasis added]); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (mentioned that "the mere possibility that an item of undisclosed information might have helped the defense, or might have helped the outcome of the trial, does not establish `materiality' in the constitutional sense. Nor do we believe the constitutional obligation [of the prosecutor to disclose exculpatory evidence] is measured by the moral culpability, or the wilfulness of the prosecutor ... If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor." 427 U.S. at 109-10, 96 S.Ct. at 2400-01, 49 L.Ed.2d at 353 [emphasis added]); United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (noted that, in cases where the government has been responsible for preaccusatory delay resulting in a loss of evidence to the defendant, "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and ... the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." 431 U.S. at 790, 97 S.Ct. at 2048-49, 52 L.Ed.2d at 759).
We therefore conclude that it is error to dismiss an information against a defendant where the defendant is claiming that improper conduct by the state has caused a witness not to testify if the defendant has not first offered a plausible explanation that the witness would have assisted him in a favorable and material way. In our view, this holding comports with our belief that an asserted denial of due process must always be tested by an evaluation of the totality of the circumstances involved in the case in question.
Reeves did not tender, or attempt to tender, any plausible explanation below that Paleaz would have assisted him in a material and favorable way. The closest thing to a credible explanation on his part was the comment by his counsel at the in camera hearing that he was "deprived of the use of [Paleaz] as a witness for any exculpatory information he might have as a result of misconduct on the part of the state." (Emphasis added.) In our view, this remark falls far short of the required plausible explanation.
Reeves may assert that, given Paleaz' silence, such a credible explanation would have been difficult to offer. But, as was the case in Valenzuela-Bernal where the respondent was never able to communicate with the deported witnesses, the task was not an impossible one. Reeves was present during the alleged narcotic transaction. He himself claimed in his motion to disclose that Paleaz was an "active participant in the alleged offense." Thus, he, as much as anyone else, should have known the events and possible defenses to which Paleaz would have testified favorably and materially.
Regardless, it must be recognized that an explanation tendered by Reeves as to how Paleaz' testimony would have been favorable and material may have been looked on by the trial court as dubious indeed, given Reeves' earlier utterance that, due to the state's inducement of Paleaz, he was simultaneously being deprived of the opportunity to "confront all witnesses against him," obviously referring to Paleaz. (Emphasis added.) In short, Reeves was more concerned with the fact that Paleaz would not testify for the defense or the state, not with the fact that Paleaz would not testify for the defense.
Because Reeves did not first offer some credible explanation of how Paleaz' testimony would have been favorable and material to his defense, the court's implicit finding that the state was responsible for Paleaz' invocation of the Fifth Amendment was unnecessary. We therefore intimate no opinion as to whether its implicit finding was erroneous.
Accordingly, we reverse the order dismissing the information with prejudice and remand with directions that the state be *25 allowed to proceed with its prosecution of the case.
REVERSED and REMANDED.
SCHOONOVER and LEHAN, JJ., concur.
NOTES
[1] The state did not argue below, and does not argue here, that the trial court should have deferred action on Reeves' motion to dismiss until after trial, at which time the court could have assessed any prejudice to Reeves in light of the events at trial.