470 A.2d 115

**COMMONWEALTH of Pennsylvania**

v.

**Dwayne JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 3, 1983.

Filed Dec. 16, 1983.

Petition for Allowance of Appeal Granted March 26, 1984.

34

John W. Packel, Chief Appeals Assistant Public Defender, Jeffrey P. Shender, Assistant Public Defender, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and HESTER and LIPEZ, JJ.

SPAETH, President Judge:

This is an appeal from judgments of sentence for rape and related offenses. Appellant argues that the trial court erred in not granting use immunity to a proposed defense witness.[1] The trial court held that only the Attorney General or a district attorney could request an immunity order, and that since here there had been no such request, no order could issue. This was error. The court itself, upon appropriate proof, had the power to grant immunity. We find, however, that the error was harmless, and therefore affirm.

1. Use immunity is the "immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom ..." *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 rehearing denied, 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972). A witness granted use immunity may not plead the Fifth Amendment. *Id.*

The charges are based on an incident described at trial as follows: On July 1, 1980, at about 2:30 a.m., appellant and Daryl Jorden entered the residence of Kelly Mock and forced her at knife-point to go to the kitchen. Jorden held a hammer to her head and raped her, and then appellant raped her. As they were leaving the house, both Jorden and appellant were arrested.

After a common suppression hearing, on a motion by Jorden's counsel the cases were severed. Appellant's case was listed for trial first. At the trial, defense counsel asked the trial court to grant use immunity to Jorden. The court refused, the trial was held without Jorden testifying, and appellant was found guilty.

In support of its refusal to grant use immunity to Jorden, the trial court cited 42 Pa.C.S.A. § 5947(b), which provides:

**(b) Request and issuance.**—The Attorney General or a district attorney may request an immunity order from any judge of a designated court, and that judge shall issue such an order, when in the judgment of the Attorney General or district attorney:

(1) the testimony or other information from a witness may be necessary to the public interest; and

(2) a witness has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

In the court's opinion, these provisions afford the only basis for an immunity order:

Since the request and issuance of immunity is within the judgment of the Attorney General and district attorney, neither the Court nor defense counsel may force the prosecutor to compel the testimony of a defense witness. Accordingly, the Court properly denied Defendant's request for immunity.

Slip op. at 6.

Appellant relies on *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir.1980). In *Smith*, a group of young men assaulted and robbed the victim of some money.

36

A principal issue at trial was the identification of the assailants. One of the assailants, Ernesto Sanchez, made a statement to the police that he and three other men, who were nicknamed "Scotto", "Mon", and "Mouth", were the assailants. This statement in effect exculpated three of the defendants, for they had different nicknames. However, when the defendants called Sanchez to testify, he invoked his Fifth Amendment privilege against self-incrimination. The defendants then tried to use Sanchez's statement, but the court sustained the Government's objection that it was unable to cross-examine Sanchez. The defendants then requested that Sanchez be granted immunity. The Virgin Islands Attorney General's Office, which had exclusive jurisdiction over Sanchez because he was a juvenile, was willing to grant immunity if the United States Attorney consented. However, the United States Attorney did not consent, the trial proceeded without Sanchez's potentially exculpatory testimony, and the defendants were convicted of robbery. On appeal, the Court of Appeals for the Third Circuit held that in some circumstances, a grant of immunity is required to ensure a fair trial. The Court discussed

two theories in which due process requires the testimony of defense witnesses to be immunized. When the court finds prosecutorial misconduct by the government's deliberate intent to disrupt the factfinding process, it should order the government to grant statutory immunity to the defense witness or face a judgment of acquittal. In addition, even if there is no evidence of such prosecutorial misconduct, when it is found that a potential defense witness can offer testimony which is clearly exculpatory and essential to the defense case and when the government has no strong interest in withholding use immunity, the court should grant judicial immunity to the witness in order to vindicate the defendant's constitutional right to a fair trial.

*Id.* at 974.

Finding that on the facts before it, either theory might be available to the defendants, the court vacated the sentence

and remanded for an evidentiary hearing to determine whether immunity should be granted.

Here, appellant does not argue that the trial court should have found prosecutorial misconduct, and on that basis should have ordered the prosecution to grant Jorden statutory immunity. Rather, appellant argues that the circumstances were such that in order to ensure a fair trial, the trial court itself should have granted Jorden judicial immunity. As already indicated, the trial court held that it had no power to grant judicial immunity. The first issue we must decide, therefore, is whether this holding was correct.

The court in *Smith* drew a distinction between an order granting judicial immunity and an order requiring the government to grant statutory immunity:

> First the need for "judicial" immunity is triggered, not by prosecutorial misconduct or intentional distortion of the trial process, but by the fact that the defendant is prevented from presenting exculpatory evidence which is crucial to his case. Second, the immunity granted is a *court* decreed immunity; it is not achieved by any order directed to the executive, requiring the executive to provide statutory immunity.

> *Id.* at 969–970 (emphasis in original).

The court noted that it had previously hinted at the availability of a judicial grant of immunity. Specifically, in *United States v. Herman*, 589 F.2d 1191 (3d Cir.1978), *cert. denied* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979) the court had stated:

> But while we think that the court has no power to order a remedial grant of statutory immunity to a defense witness absent a showing of unconstitutional abuse, a case might be made that the *court has inherent authority to effectuate the defendant's compulsory process right by conferring a judicially fashioned immunity upon a witness whose testimony is essential to an effective defense.*

*Id.* at 1204 (emphasis added).[2]

However, in *Herman* the court did not decide the issue of judicial immunity, for it had not been raised by the parties. When the issue was raised in *Smith*, the court held that in certain circumstances due process requires that a court grant immunity. It found support for its holding in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Thus the court. explained:

> As we noted in *Herman, Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), albeit in a context different than immunity, furnishes strong support for the holding that immunity may be required for a defense witness if realistic meaning is to be given to a defendant's due process right to have exculpatory evidence presented to the jury. 589 F.2d at 1204. In *Chambers*, the Supreme Court held that Mississippi's strict adherence to its rules of evidence, which prevented the defendant, Chambers, from introducing trustworthy, exculpatory evidence, effectively denied Chambers a fair trial in accordance with the principles of due process. Chambers had sought to cross-examine a witness who

---

**2.** The Constitutional right involved in *Smith* was not the Sixth Amendment right to compulsory process but the Fourteenth Amendment right to due process of law. However, a strong argument can be made that the right to compulsory process includes the right to compel the testimony of a defense witness over the witness's claim of privilege. *See:* Note: The Sixth Amendment Right to Have Use Immunity Granted to Defense Witnesses, 91 Harv.L.Rev. 1266 (1978); Westen, Compulsory Process, 73 Mich.L.Rev. 71, 168 (1974) ("The constitutional right of the accused to obtain immunity for his witnesses falls squarely within the language and purpose of the compulsory process clause."); McCormick on Evidence § 143 at 308 (2nd ed.) ("It is certainly arguable that without the right to have immunity granted a defendant lacks 'compulsory process for obtaining witnesses in his favor' guaranteed by the Sixth Amendment.") *But see: United States v. Turkish*, 623 F.2d 769 (2d Cir.1980), *cert. denied* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). (Sixth Amendment compulsory process does not include right to have immunity granted to defense witnesses); *United States v. Trejo-Zambrano*, 582 F.2d 460 (9th Cir. 1978), *cert. denied sub. nom. Fierro-Soza v. United States*, 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1979) (same); *United States v. Smith*, 542 F.2d 711 (7th Cir.1976) (same). *See generally:* 4 A.L.R.4th 617, "Right of Defendant in Criminal Proceedings to Have Immunity from Prosecution Granted to Defense Witnesses".

had previously confessed to the same crime; he was prevented from doing so by the state's evidence rule against a party impeaching his own witness. In addition, rigid application of Mississippi's rule against hearsay prevented Chambers from introducing other informal admissions of the witness' guilt which would have exculpated Chambers. The Supreme Court, recognizing the crucial importance of the excluded evidence, reversed Chambers' conviction, holding that his due process right to present an effective defense had been violated. To remedy the constitutional deficiency found in *Chambers*, the Court required that Chambers be retried so that the exculpatory evidence, which he had originally been denied, could be admitted at the new trial. In this case the *prima facie* due process violation revealed by the record, i.e., the denial of exculpatory evidence to which [the defense witness] could testify, is not different in substance than the violation found in *Chambers*.

*Government of Virgin Islands v. Smith, supra* at 970 (footnote omitted).

Furthermore, the court noted, a new trial

would be insufficient to remedy the constitutional infringement which may have occurred here. Any remedy in the present case must take into account the fact that a retrial would be meaningless unless the evidence in issue may be compelled. That compulsion can only be accomplished in the context of a case such as the instant one, by granting immunity to a defense witness, once it is established, however, that the conditions for such a remedy have been satisfied.

*Id.* at 971.

We are aware that there is a considerable division of opinion on whether a court does have inherent power to grant use immunity. The United States Supreme Court has not decided the issue, and the circuit courts have divided at least three ways, the Third Circuit, in *Smith*, finding the

power; [3] other circuit courts denying existence of the power; and still others holding that on the facts before them, immunity was properly denied, while leaving open whether on other facts immunity might have been granted. *See United States v. Thevis*, 665 F.2d 616, 638–39 (5th Cir.) *cert. denied Evans v. United States*, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303; *cert. denied Hood v. United States*, 458 U.S. 1109, 102 S.Ct. 3489, 73 L.Ed.2d 1370; *cert. denied Thevis v. United States*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982) (collecting cases). We are nevertheless persuaded by the reasoning of *Smith;* in any event, we are probably bound by it, for as stated by our Supreme Court in *Commonwealth v. Negri*, 419 Pa. 117, 122, 213 A.2d 670, 672 (1965), overruled on other grounds, *Commonwealth v. Senk*, 423 Pa. 129, 223 A.2d 97 (1966):

> While recognizing that in cases involving federal questions the Supreme Court of the United States is the ultimate arbiter, in view of the widespread confusion in this area of the law and the failure of the Supreme Court to clarify it, the decision of the Third Circuit Court of Appeals is on this matter, for all practical purposes, the ultimate forum in Pennsylvania. If the Pennsylvania courts refuse to abide by its conclusions, then the individual to whom we deny relief need only to "walk across the street" to gain a different result. Such an unfortunate situation would cause disrespect for the law. It would also result in adding to the already burdensome problems of the Commonwealth's trial courts, which look to us for guidance. Finality of judgments would become illusory, disposition of litigation prolonged for years, the business of the courts unnecessarily clogged, and justice intolerably delayed and frequently denied.

**3.** The Third Circuit cases cited by the Commonwealth, *United States v. Rocco*, 587 F.2d 144 (3rd Cir.1978) *cert. denied sub nom. La Duca v. United States*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979), and *United States v. Niederberger*, 580 F.2d 63 (3rd Cir.1978) *cert. denied* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978), are distinguished in *Smith. See: Government of Virgin Islands v. Smith, supra* at 972 n. 11.

Consequently, in order to alleviate and correct a regrettable situation, the clear indication for this Court is to accept and follow the decision of the Third Circuit on this matter until some further word is spoken by the Supreme Court of the United States.

We therefore hold that the trial court did have inherent power to grant appellant's request that Jorden be granted use immunity.[4] The conclusion follows that in holding that it had no such power, but could only grant immunity pursuant to 42 Pa.C.S.A. § 5947(b), the trial court erred.

This conclusion, however, is not dispositive. For the issue remains whether the trial court should have exercised the inherent power that we have held it had. If it should not have exercised the power, its error in believing that it did not have the power was harmless.

The issue whether a trial court should exercise its inherent power to grant use immunity was considered at some length in *Smith*. The court in *Smith* recognized, as have other courts, *see United States v. Thevis, supra,* and cases there cited, that the decision whether to grant immunity might well involve balancing conflicting considerations:

Frequently, the government will have a legitimate interest in prosecuting the very witness whom the defendant seeks to immunize. But this does not mean that no

**4.** We may note in passing that while *Smith* is based on the right to due process guaranteed by the United States Constitution, the same right is guaranteed by the Pennsylvania Constitution, which provides:

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him ... nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land.

Pa. Const. Article I, Section 9.

And in *Commonwealth v. Devlin,* 460 Pa. 508, 514, 333 A.2d 888, 891 (1975), the Court stated:

It has been a long-standing tenet of Pennsylvania jurisprudence that "the law of the land" in Article I, Section 9 is synonymous with "due process of law." *See, e.g., Commonwealth v. Jackson,* 457 Pa. 79, 319 A.2d 161 (1974); *Craig v. Kline,* 65 Pa. 399, 413 (1870). Thus, we have held that the State Constitution is violated where the defendant is substantially denied an opportunity to present a defense. *Commonwealth v. Jester,* 256 Pa. 441, 100 A. 993 (1917).

accommodation can be reached between the government's interest as prosecutor and the defendant's constitutional right to present an effective and entire case.

*Government of Virgin Islands v. Smith, supra,* at 973. "In many instances", the court said, a grant of use immunity to the proposed defense witness would be "virtually costless," for the government would have already assembled the evidence necessary to prosecute the witness. *Id.* Or the government might be able otherwise to protect its interest, as, for example, by postponing the defendant's trial until it had completed assembling its evidence against the witness. However,

> where the government either rebuts the defendant's showing [of need to call the witness] or establishes that the public interest would be disserved by a grant of immunity to a defense witness or that such grant would entail significant costs to it, it would be appropriate for the immunity application to be denied.

> *Id.*

Summarizing its decision, the court stated:

> We hold that, in cases when the government can present no strong countervailing interest, a court has inherent authority to immunize a witness capable of providing clearly exculpatory evidence on behalf of a defendant who has met our stated conditions.

> *Id.* at 973–74.

On the facts before it, the court in *Smith* concluded, as we have already noted, that the judgments of sentence should be vacated and the case remanded for an evidentiary hearing on whether a grant of judicial immunity was required to ensure the defendants' right to a fair trial. Even those who have disagreed with the court's reasoning in *Smith* have agreed with the result. *See United States v. Turkish,* 623 F.2d 769, 777 (2d Cir.1980). And indeed, it would be difficult not to agree, for the government's conduct, at least as the record stood and without further explanation, was shocking: the witness the defense sought to have immunized had given the police a statement that

three of the defendants had not participated in the crime; the government had objected to the use of this statement at trial; it had refused to permit defense counsel to interview the witness; and finally, it had no power to prosecute the witness, although the Attorney General of the Virgin Islands, who did have the power, had no objection to the witness being immunized. Given these facts, it is not surprising that the court in *Smith* held that "it appears from the record that the United States Attorney would have little claim to any governmental interest in approving a grant of immunity to [the witness]." *Id.* at 974. Here, however, the facts are very different.

In the first place, appellant's claim that if Jorden were immunized his testimony would exculpate appellant, is at least suspect. In requesting that Jorden be immunized, appellant's counsel stated that:

Daryl Jorden will testify that, in fact, he did not rape her, that, in fact, any sexual contact between the parties was consen[s]ual, that no rape took place, nor was there any implement usage [*sic*] of an instrument of crime, any assault, or any threats, which I believe are the current outstanding charges. And, of course, no conspiracy to commit any of these crimes.

N.T. 26 (4/20/81).

However, the record discloses that appellant gave a statement to the police in which he said, among other things:

My cousin had Pat call her [the victim] downstairs, and when she came down my cousin had a knife out. I took the knife from him but he grabbed a hammer which was on the living room table and pulled the girl from the living room where we was to the kitchen where it was dark. I had given Daryl [Jorden] the knife back before he took the girl out, because I wasn't going to fight him. Pat went back upstairs. I left the house then and the cops stopped me as I was crossing the street. They got Daryl as he came out behind me. Daryl put the knife in the stretcher of the wagon that brought us down here. I

didn't touch that girl.... I couldn't see what Daryl was doing with the girl in the kitchen because it was dark. N.T. 223–24 (4/15/81).

Thus, in *Smith* the witness that the defendant asked be immunized had given a statement to the police exculpating the defendant. But here the record does not disclose what the witness—Jorden—would testify; it only discloses what appellant's counsel said he would testify, and that offer, while outlining testimony that would exculpate appellant, described the incident in a manner inconsistent with appellant's own description of it. At the hearing on the immunity request, the trial court, although concluding that it had no authority to grant immunity, nevertheless considered appellant's request. The court found that "[t]he testimony sought through th[e] requested grant of judicial use immunity ha[d] not been shown to be clearly exculpatory or essential in any case." N.T. 46 (4/21/81). We agree with that finding.

In the second place, the witness in *Smith* and the witness here were in very different positions. In *Smith*, as already noted, not only had the witness not been charged but he could not be, since he was a juvenile within the exclusive jurisdiction of the Attorney General of the Virgin Islands. Here, Jorden was appellant's co-defendant, who was to be tried with appellant, until the cases were severed. Thus, had Jorden been immunized, the prosecution of appellant might have been made more difficult, for Jorden, encouraged by his immunization, might have given false testimony, with the result that appellant might have been acquitted. In addition, the prosecution of Jorden might have been made more difficult, for if appellant were acquitted, he might have felt free to testify on Jorden's behalf at Jorden's trial. As the trial court stated:

[T]he witness in question is an indicted co-conspirator who would, were immunity to be granted, be in a position to testify in any manner he chose to whatever effect he chose without fear of the consequences and thus be aided

by the Court in possible efforts to aid and abet his co-conspirator in thwarting the ends of justice.

N.T. 46 (4/21/81).

The court in *United States v. Thevis, supra,* addressed this problem of possible abuse by co-defendants, should a grant of judicial immunity issue. Upholding a trial court's refusal to grant immunity, the court said:

> The incentive for abuse is strong given that the witness, because of immunity, is in no worse a legal position for having testified, and because of the heavy burden on the government to prove lack of taint, the witness in practice may improve his legal position.
>
> Nor are we convinced that perjury prosecutions are an adequate deterrent. Successful perjury prosecutions are not common, and in many cases the penalty for the substantive crime will far surpass perjury penalties.
>
> 665 F.2d at 640 n. 27.

Thus, the court said:

> Whatever may be gained in fairness in a particular trial in which true exculpatory evidence may be obtained only through judicial use immunity, therefore, may well be lost through the subsequent effect of abuse on the integrity of the judicial process as a whole.
>
> 665 F.2d at 640.

■ Given the differences between the record in *Smith* and the record here, we are satisfied that the court in *Smith* would conclude, were this case before it, that appellant was not entitled to have Jorden immunized. As we have noted, the court in *Smith* held that "it would be appropriate for the immunity application to be denied" if the record "establishes that the public interest would be disserved by a grant of immunity to a defense witness or that such grant would entail significant costs to [the prosecution]." 615 F.2d at 973. Here, the uncertainty as to what Jorden would testify, taken with the fact that he was himself a co-defendant, does establish, in our opinion, that

46

the public interest would be disserved by granting him judicial immunity.

We recognize that in *Smith* the court remanded for a hearing on whether judicial immunity should have been granted. However, we see no need for a remand here, for the trial court has already held a hearing on appellant's request. Moreover, appellant does not request a remand for a hearing, instead asking that we ourselves "order a new trial with use immunity being conferred on the witness Daryl Jorden." Brief for Appellant at 18. We assume, therefore, that appellant has already offered of record all he can. Since, as we have held, that offer was inadequate to justify a grant of immunity, we are in a position to decide the appeal now.

Affirmed.