467 So.2d 387 (1985)
The STATE of Florida, Petitioner,
v.
Henry MONTGOMERY, Respondent.
No. 84-1671.
District Court of Appeal of Florida, Third District.
March 26, 1985.
Rehearing Denied April 29, 1985.
*389 Jim Smith, Atty. Gen., and Jack B. Ludin, Asst. Atty. Gen., for petitioner.
Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal, Asst. Public Defender, for respondent.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
We treat the state's petition as a petition for a writ of prohibition. The petitioner seeks a writ from this court prohibiting the trial court from enforcing an order which will compel a witness to testify and will grant him use and derivative use immunity over the state's objection. We grant the petition since enforcement of the order by the trial court would amount to an act in excess of the jurisdiction, power and authority given to the courts by the Florida constitution.
By information, the state charged the defendant with grand theft, resisting arrest with violence, obstruction by false information, and battery on a law enforcement officer. The day before trial on these charges, the defendant named Melvin Downey as a potential defense witness. Downey refused to testify, however, unless he was granted immunity. The state refused to grant him immunity and, therefore, the defendant moved the trial court to do so. It was proffered that Downey "was present at the scene and saw the incident involving" the defendant, and that he had relevant exculpatory testimony. Over the state's objection, the trial court entered an order which will compel Downey to testify and grant him use and derivative use immunity.
The problem we are presented with concerns the judiciary's authority to involve itself in a decision to grant use and derivative use immunity to a witness at the request of a defendant in a criminal proceeding. *390 The state, of course, has authority to confer such immunity on a witness if it chooses to do so. See Tsavaris v. Scruggs, 360 So.2d 745 (Fla. 1977); Novo v. Scott, 438 So.2d 477 (Fla. 3d DCA 1983), review denied, 446 So.2d 100 (Fla. 1984); State v. Schell, 222 So.2d 757 (Fla. 2d DCA 1969); § 914.04, Fla. Stat. (1983). The problem arises when the state refuses to grant immunity and the defendant claims either (1) the prosecutor is conducting the case in an improper manner by unreasonably refusing to grant the witness immunity in an attempt to distort the fact finding process of the trial;[1] or (2) the witness has relevant exculpatory testimony not available without the grant of immunity due to the witness's assertion of his fifth amendment privilege against self-incrimination.[2] Although the problem of the judiciary's role in the granting of use immunity has been presented to the federal courts on numerous occasions, Florida courts to date have declined to take a position.[3],[4]See Lavette v. State, 442 So.2d 265 (Fla. 1st DCA 1983), review denied, 449 So.2d 265 (Fla. 1984); State v. Harris, 425 So.2d 118 (Fla. 3d DCA 1982); State v. Mesa, 395 So.2d 242 (Fla. 3d DCA 1981). But see Fountaine v. State, 460 So.2d 553 (Fla. 2d DCA 1984) (implicitly rejecting the judicial immunity theory). In order to aid the trial courts and the bar on these issues in the future, we find that the present case presents an appropriate vehicle to adopt a position. In doing so we look to the federal courts for guidance on the issues presented.

DEFENSE WITNESS IMMUNITY
The concept of defense witness use immunity can be divided into two categories or theories: "statutory" immunity and "judicial" immunity. See United States v. Turkish, 623 F.2d 769, 773 (2d Cir.1980), cert. denied, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); Government of Virgin Islands v. Smith, 615 F.2d 964 (3d Cir.1980); United States v. Herman, 589 F.2d 1191, 1199-1205 (3d Cir.1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979). Statutory immunity is generally that power granted by the legislature to the executive branch through statute which gives a prosecutor authority to confer immunity on a witness in return for the witness's self-incriminating testimony. See 18 U.S.C.A. § 6002 (Supp. 1984); § 914.04, Fla. Stat. (1983). Judicial immunity, on the other hand, is held by some courts to exist independent of any statute. This immunity is said to stem from a court's inherent power or authority to effectuate a defendant's rights. Virgin Islands, 615 F.2d at 969; Herman, 589 F.2d at 1204. See also Turkish, 623 F.2d at 773. We have reviewed both theories of defense witness immunity and determined their propriety with regard to Florida criminal proceedings.

Statutory Immunity
Judicial authority with regard to statutory immunity was first recognized by the Third Circuit Court of Appeals in United States v. Morrison, 535 F.2d 223 (3d Cir.1976) and later clarified by that court's opinions in Herman and Virgin Islands. The underlying basis for the judiciary's intrusion into the statutory immunity decision, traditionally an exclusive executive prerogative, is some form of prosecutorial misconduct. Virgin Islands, 615 F.2d at 968. When such misconduct results in an abridgment of a criminal defendant's constitutional rights, the grant of statutory immunity by the government is a remedy *391 by which the constitutional violation can be cured and, thus, the government can avoid an acquittal of the defendant.
Referring to its holding in Morrison, the court in Herman stated:
We held that the sixth amendment and the Due Process Clause guarantee to a defendant the right to subpoena a witness, and to have that witness available as he finds him. See Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The government's threats and intimidation had violated that right by depriving the defendant of that witness's testimony. See Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). This violation warranted the dismissal of the indictment. We then turned to the separate question whether, because of the availability of use immunity under 18 U.S.C. §§ 6002-6003, the government could cure the sixth amendment violation which it had committed. We held that it could... .
... .
The violation in Morrison was the government's threats and intimidation of the witness. The use of a grant of immunity from the executive branch, a creature solely of statute, and intended solely to benefit the government, was only a cure for that violation.
589 F.2d at 1199-1200. It is important to note that when a situation arises calling for a grant of defense witness immunity under the statutory immunity theory, it is the executive branch that decides whether to grant the immunity, not the judiciary. Under this theory, when prosecutorial misconduct violative of a defendant's constitutional rights occurs, either the government gives the defense witness immunity and he testifies, or the government suffers a judgment of acquittal. Virgin Islands, 615 F.2d at 968; Herman, 589 F.2d at 1200; Morrison, 535 F.2d at 229. The choice is left solely with the executive branch, however and the prosecutor's decision one way or the other is not reviewable by the courts. Herman, 589 F.2d at 1200-03.
The third circuit court recognized that any judicial review of the immunity decision would necessarily trench seriously upon the authority of the executive branch. Herman, 589 F.2d at 1200-03. The court has also recognized that even its adoption of the statutory immunity remedy, where the government elects between a granting of use immunity to a defense witness or an acquittal of the defendant, allows courts to seriously intrude into the realm of the executive branch. Virgin Islands, 615 F.2d at 968. For this reason, a heavy burden is placed upon the defendant to establish prosecutorial misconduct of a type that would necessitate this remedy. Thus, the court in Herman held:
In view of our governmental system's strong tradition of deference to prosecutorial discretion [citations omitted], and of the necessary tendency of the executive branch to exercise that discretion in ways that make it more likely that defendants will be convicted, we think that the evidentiary showing required to justify reversal on that ground must be a substantial one. The defendant must be prepared to show that the government's decisions were made with the deliberate intention of distorting the judicial fact finding process. Where such a showing is made, the court has inherent remedial power to require that the distortion be redressed by requiring a grant of use immunity to defense witnesses as an alternative to dismissal. [Morrison]. [emphasis added]
589 F.2d at 1203-04.
Although the third circuit's statutory immunity theory has not been expressly adopted by most courts, it is generally viewed in a favorable light.[5] We agree *392 with the third circuit, that the sixth amendment and the due process clause of the federal constitution guarantee to a defendant the right to subpoena a witness, and to have that witness available as he finds him.[6]Herman, 589 F.2d at 1199. See Washington v. Texas, 388 U.S. 14, 17-19, 87 S.Ct. 1920, 1922-23, 18 L.Ed.2d 1019 (1967); Demps v. State, 416 So.2d 808 (Fla. 1982). We find that a criminal defendant in Florida is guaranteed this same right by Florida's constitution. See art. I, §§ 9, 16, Fla. Const. We hold, therefore, that when this right is violated by some form of prosecutorial misconduct, a judgment of acquittal is warranted. The state can avoid a judgment of acquittal in an appropriate case, however, if it cures the constitutional violation by means of a grant of use immunity to the appropriate defense witness pursuant to section 914.04, Florida Statutes (1983). See Herman; Morrison.
The defendant must make a substantial evidentiary showing of prosecutorial misconduct, however, before the statutory immunity remedy is available. We adopt the standard enunciated in Herman, that the defendant must be prepared to show that the state's decisions were made with "the deliberate intention of distorting the judicial fact finding process." 589 F.2d at 1204. Thus, when it is shown that the state's decision not to grant immunity to a defense witness was a decision made with such intent, the court has remedial power to require that the distortion be redressed by requiring a grant of use immunity to the witness as an alternative to a judgment of acquittal.[7]See Virgin Islands, 615 F.2d at 968; Herman, 589 F.2d at 1204. Absent this type of prosecutorial misconduct, however, a defendant is foreclosed from insisting that statutory immunity be granted his witness. See Virgin Islands, 615 F.2d at 968.
In the present case, the defendant has utterly failed to make any showing of the requisite prosecutorial misconduct. Nor does the record reflect that any such showing could be made in this case. We expressly reject the defendant's implicit contention that where the state declines to grant use immunity, the absence of a present intention to prosecute the witness is evidence of an intention to distort the fact finding process. A prosecutor without sufficient evidence to seek a conviction of a witness may legitimately prefer to maintain his option to prosecute on the basis of later information. See Turkish, 623 F.2d at 777. Accordingly, since no prosecutorial abuse in the immunity decision can be found in the present case, there is no constitutional violation to be cured, and this is not an appropriate case for the application of statutory immunity.[8]

Judicial Immunity
Judicial immunity differs from statutory immunity in two respects. First, judicial immunity is not triggered by prosecutorial misconduct or intentional distortion of the trial process, but rather by the fact that the defendant is prevented from presenting *393 exculpatory evidence which is crucial to his defense. Second, the immunity is not achieved by an order directed to the prosecutor, requiring him to provide statutory immunity, but rather is a court decreed immunity. Virgin Islands, 615 F.2d at 969-70. The only federal circuit court that has adopted the judicial immunity theory is the third circuit court. In Herman the court first recognized the possibility that a court may have inherent authority to effectuate a defendant's compulsory process right by conferring a judicially fashioned immunity upon a witness whose testimony is essential to an effective defense. 589 F.2d at 1204. The third circuit court expressly adopted and defined the parameters of judicial immunity in Virgin Islands.
The court relied principally on Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) in formulating the judicial immunity theory. Chambers was used as a guide for setting up limitations on the use of judicial immunity by a court. The court in Virgin Islands held that before judicial immunity can be granted to a defense witness: the immunity must be properly sought in the trial court; the witness must be available to testify; the witness must be able to justifiably assert a fifth amendment privilege as to the testimony sought; the proffered testimony must be clearly exculpatory; the testimony must be essential (the testimony must not be ambiguous, cumulative or relate only to credibility); and there must be no strong governmental interests which countervail against a grant of immunity. 615 F.2d at 972-74.
Despite these apparent safeguards or limitations on the use of judicial immunity, most courts have either expressly rejected the theory or have severely criticized it. In fact, every federal circuit court, outside the third circuit, has rejected or found fault with the idea that the judiciary has some inherent power to grant immunity.[9] In addition, a number of state courts have also been reluctant to accept the idea.[10]
*394 The most common basis for rejecting the judicial immunity theory is the doctrine of separation of powers. The decision of whether or not to grant a witness immunity is traditionally viewed as an executive function. It is generally considered that judicially fashioned immunity would improperly carry the courts into policy assessment areas which are within the traditional domain of the executive branch of government.[11]See United States v. Thevis, 665 F.2d 616, 639-40 (5th Cir. Unit B), cert. denied, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303, cert. denied, 458 U.S. 1109, 102 S.Ct. 3489, 73 L.Ed.2d 1370, cert. denied, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982); Daley v. Attorney Registration & Disciplinary Commission of Supreme Court of Illinois, 549 F.2d 469, 478-80 (7th Cir.), cert. denied, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977). Courts have recognized that an immunity decision would require a trial judge to examine pretrial all the facts and circumstances surrounding the government's investigations in order to properly assess the possible harm to public interests of an immunity grant. These collateral inquiries, it has been postulated, would necessitate significant expenditures of judicial energy to the detriment of the judicial process overall, and would risk jeopardizing the impartiality and objectivity of the judge at trial. Thevis, 665 F.2d at 640. See Turkish, 623 F.2d at 776-77. For these reasons, it is generally held that the balancing of interests concerning who and when to prosecute should be left to the executive branch. United States v. Chagra, 669 F.2d 241, 261 (5th Cir.), cert. denied, 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982). See also Thevis; Turkish.
Courts have also rejected the view expressed in Virgin Islands that the compulsory process clause gives a defendant the right to request that judicial immunity be granted his witnesses. It has been held that the purpose of the clause is to give subpoena power to the defendant, not to supercede a witness's invocation of his fifth amendment right or to give the defendant an unlimited right to present witnesses without regard to privileges or rules of evidence. Chagra, 669 F.2d at 260. Although a trial is generally characterized as a search for the truth, this characterization has always fallen short of full realization whenever important facts are shielded from disclosure because of a lawful privilege. Turkish, 623 F.2d at 775. See also Thevis, 665 F.2d at 640. The compulsory process clause gives the defendant the right to bring his witnesses to court and to have their non-privileged testimony heard; it does not carry with it the additional right to displace a proper claim of privilege, including the privilege against self-incrimination. See Turkish, 623 F.2d at 774 and cases cited. While the prosecutor may not prevent or discourage a defense witness from testifying, Washington v. Texas; Morrison, the compulsory process clause does not place any affirmative obligation on either the prosecutor or the court to *395 secure testimony from a defense witness by replacing the self-incrimination privilege with a grant of use immunity.[12]Turkish, 623 F.2d at 774. See also United States v. Smith, 542 F.2d 711, 715 (7th Cir.1976). Cf. Lavette, 442 So.2d at 267 (state not obliged to produce prosecution or defense witnesses for deposition or trial); Mesa, 395 So.2d at 243 (prosecution not obliged to produce prosecution or defense witnesses for deposition or trial, and state cannot be held responsible for a witness's invocation of the fifth amendment privilege). Cf. State v. Reeves, 444 So.2d 20 (Fla. 2d DCA 1983) (confrontation clause does not give a defendant a right to compel a witness to testify for the state so that he may confront that witness).
In a similar vein, the view expressed by the court in Virgin Islands that the due process clause is a valid source of a court's power to grant judicial immunity has been rejected. As the second circuit court has held, the essential fairness required by the due process clause guards the defendant against overreaching by the prosecutor, and insulates the defendant against prejudice. It does not, however, create general obligations for prosecutors or courts to obtain evidence protected by lawful privileges.[13]See Turkish, 623 F.2d at 774-77. See Smith, 542 F.2d at 715. See also Lavette; Mesa.
A concern has also been expressed about the potential for abuse of judicial immunity by co-defendants and co-conspirators. The second circuit court found considerable force to the concern:
[D]efense witness immunity could create opportunities for undermining the administration of justice by inviting cooperative perjury among law violators. Co-defendants could secure use immunity for each other, and each immunized witness could exonerate his co-defendant at a separate trial by falsely accepting sole responsibility for the crime, secure in the knowledge that his admission could not be used at his own trial for the substantive offense. The threat of a perjury conviction, with penalties frequently far below substantive offenses, could not be relied upon to prevent such tactics.
Turkish, 623 F.2d at 775. Accord Thevis, 665 F.2d at 640 n. 27. The fifth circuit court found that no safeguards or limitations on the use of judicial immunity would be adequate to reduce the risk of this abuse. Accordingly, the court recognized that any gain that might be realized in a particular trial through the use of judicial immunity to obtain true exculpatory evidence, would be more than offset by the subsequent effect of abuse on the integrity of the judicial process as a whole. Thevis, 665 F.2d at 640.
After reviewing the various opinions and conflicting policy arguments, we find that we are aligned with the majority in rejecting the concept of judicial immunity as formulated in Virgin Islands. We do not interpret the applicable provisions in Florida's constitution as granting a criminal defendant any greater rights than the provisions' counterparts in the federal constitution. We hold, therefore, that courts do not have any inherent power to grant use immunity to a defense witness over the state's objection. See Fountaine, 460 So.2d at 554-55. Cf. Harris, 425 So.2d at 120 ("a court of this state is powerless to provide a witness with transactional immunity over the State's objection").

CONCLUSION
The Third Circuit Court of Appeals has formulated two theories of defense witness immunity. The concept of "statutory" immunity we have adopted, but we have rejected *396 the "judicial" immunity theory. Accordingly, the only instance in which a Florida court may involve itself in an immunity decision is when there has been some form of prosecutorial misconduct amounting to a violation of a defendant's constitutional rights, and that violation can be remedied by a grant of statutory use immunity to a defense witness. In that instance, the court may only get involved to the point of presenting the state with the choice of either granting the witness use immunity under section 914.04 of the Florida Statutes to cure the constitutional violation or suffering a judgment of acquittal. We find some comfort in language in the Supreme Court's decision in Tsavaris wherein, while narrowly construing the present immunity statute's predecessor, the court states:
There is nothing in Article I of our Constitution, the federal constitution, or in any statute, that compels us to insulate those suspected of criminal acts from vigorous investigation and prosecution.
... .
Our decision today does not limit the protections afforded by the ... United States Constitution or Article I ... of the Florida Constitution. We simply refrain from extending immunity, as a remedy, beyond its statutory boundaries.
360 So.2d at 752. See also Fountaine.
In the present case, the trial court would be acting in excess of its jurisdiction if it grants use immunity to Downey, the defense witness, over the state's objection since it has no power to do so. Further, since the defendant has failed to establish an intention on the part of the state to distort the fact finding process of the trial through prosecutorial misconduct, statutory immunity is not available to the defense witness. Accordingly, the petition for writ of prohibition against the trial court is granted. The issuance of the formal writ is withheld, however, in full confidence that the trial court will proceed in accordance with the law as set forth in this opinion.
NOTES
[1] See infra discussion on statutory immunity.
[2] See infra discussion on judicial immunity.
[3] In State v. Harris, 425 So.2d 118 (Fla. 3d DCA 1982), this court held that courts of this state are powerless to provide a witness with transactional immunity over the state's objection. We expressly declined to decide, however, what powers Florida courts had with regard to use and derivative use immunity. It is to this latter type of immunity that this opinion is directed.
[4] In the recent decision of Fountaine v. State, 460 So.2d 553 (Fla. 2d DCA 1984), the court held that immunity in Florida is solely a creature of statute. Without discussing the judicial immunity theory, the court implicitly rejected it, citing a number of federal cases which have done so.
[5] See e.g., United States v. Gottesman, 724 F.2d 1517, 1524 n. 9 (11th Cir.1984); United States v. Lord, 711 F.2d 887, 891 (9th Cir.1983); United States v. Frans, 697 F.2d 188, 191 (7th Cir.), cert. denied, ___ U.S. ___, 104 S.Ct. 104, 78 L.Ed.2d 107 (1983); United States v. Thevis, 665 F.2d 616, 640-41 (5th Cir. Unit B), cert. denied, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303, cert. denied, 458 U.S. 1109, 102 S.Ct. 3489, 73 L.Ed.2d 1370, cert. denied, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982); Turkish, 623 F.2d at 774; United States v. Klauber, 611 F.2d 512, 517-18 (4th Cir.1979), cert. denied, 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980). See also Harris, 425 So.2d at 121; Mesa, 395 So.2d at 243 n. 1; People v. Shapiro, 50 N.Y.2d 747, 409 N.E.2d 897, 905-06, 431 N.Y.S.2d 422 (1980).
[6] Although the sixth amendment compulsory process clause and the due process clause guarantee a defendant the right to subpoena a witness and to have that witness available as he finds him, they do not give a defendant a right to compel testimony in the face of an assertion of a lawful privilege by the witness. See infra text accompanying notes 12-13.
[7] Although the court must find that the proffered testimony would be relevant to the defendant's case, there is no requirement that it be clearly exculpatory or essential to the defense. See Virgin Islands, 615 F.2d at 969 n. 7. Cf. Demps, 416 So.2d at 810 (prejudice to defendant presumed where state interferes with testimony of defense witness).
[8] We note for clarity that even if the requisite prosecutorial misconduct had been established in this case, the proper procedure would have been for the court to allow the state to decide whether to suffer a judgment of acquittal in this case or to grant Downey, the defense witness, use immunity pursuant to section 914.04 and thereby cure the constitutional violation.
[9] See, e.g., United States v. Mendia, 731 F.2d 1412, 1414 (9th Cir.1984) (U.S. appeal pending); Gottesman, 724 F.2d at 1524; United States v. Hardrich, 707 F.2d 992, 993-94 (8th Cir.), cert. denied, ___ U.S. ___, 104 S.Ct. 481, 78 L.Ed.2d 769 (1983); Autry v. Estelle, 706 F.2d 1394, 1400-03 (5th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1458, 79 L.Ed.2d 906 (1984); United States v. Carlin, 698 F.2d 1133, 1136 (11th Cir.), cert. denied, 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983); United States v. Heffington, 682 F.2d 1075, 1080-81 (5th Cir.1982), cert. denied, 459 U.S. 1108, 103 S.Ct. 734, 74 L.Ed.2d 957 (1983); United States v. Hunter, 672 F.2d 815, 818 (10th Cir.1982); United States v. Chagra, 669 F.2d 241, 258-61 (5th Cir.), cert. denied, 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982); United States v. Drape, 668 F.2d 22, 26-27 (1st Cir.1982); United States v. Heldt, 668 F.2d 1238, 1282-83 (D.C. Cir.1981), cert. denied, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); United States v. Bowling, 666 F.2d 1052, 1055 (6th Cir.1981), cert. denied, 455 U.S. 960, 102 S.Ct. 1475, 71 L.Ed.2d 680 (1982); Thevis, 665 F.2d at 638-41; United States v. D'Apice, 664 F.2d 75, 77 (5th Cir. Unit B 1981); United States v. Karas, 624 F.2d 500, 505 (4th Cir.1980), cert. denied, 449 U.S. 1078, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981); Turkish, 623 F.2d at 771-79; United States v. Lenz, 616 F.2d 960, 962-63 (6th Cir.), cert. denied, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980); Klauber, 611 F.2d at 517; United States v. Richardson, 588 F.2d 1235, 1241 (9th Cir.1978), cert. denied, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636, cert. denied, 441 U.S. 931, 99 S.Ct. 2049, 60 L.Ed.2d 658 (1979); United States v. Beneveniste, 564 F.2d 335, 339 n. 4 (9th Cir.1977); United States v. Housand, 550 F.2d 818, 824 (2d Cir.), cert. denied, 431 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 (1977); Daley v. Attorney Registration & Disciplinary Comm'n of Supreme Court of Illinois, 549 F.2d 469, 478-80 (7th Cir.), cert. denied, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977); United States v. Smith, 542 F.2d 711, 715 (7th Cir.1976).
[10] See, e.g., State v. Jeffers, 135 Ariz. 404, 661 P.2d 1105, 1125, cert. denied, ___ U.S. ___, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983); People v. Sutter, 134 Cal. App.3d 806, 184 Cal. Rptr. 829, 833-35 (Ct.App. 1982); Fountaine; People v. Columbo, 118 Ill. App.3d 882, 74 Ill.Dec. 304, 368, 455 N.E.2d 733, 797 (App.Ct. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 2394, 81 L.Ed.2d 351 (1984); Walters v. State, 271 Ind. 598, 394 N.E.2d 154, 157 (1979); State v. Wade, 442 So.2d 681 (La. Ct. App. 1983), cert. denied, 444 So.2d 1245 (La. 1984); Commonwealth v. Curtis, 388 Mass. 637, 448 N.E.2d 345, 348-50 (1983); State v. Ammons, 208 Neb. 812, 305 N.W.2d 812, 814-15 (1981); McCabe v. State, 98 Nev. 604, 655 P.2d 536, 537 (1982); State v. Sanchez, 98 N.M. 428, 649 P.2d 496, 498-503 (Ct.App. 1982); State v. Dachtler, 318 N.W.2d 769, 772-73 (N.D. 1982); State v. Ahmadjian, R.I. 438 A.2d 1070, 1078 (1981); Fuetes v. State, 662 S.W.2d 19, 20-21 (Tex. Ct. App. 1983). But see Commonwealth v. Johnson, 323 Pa.Super. 33, 470 A.2d 115 (1983) (adopts Virgin Islands and judicial immunity theory).
[11] Although theoretically, granting use immunity to a witness does not preclude future prosecution of that witness, in practice it seriously impairs any potential prosecution because of the heavy burden placed on the prosecutor to establish that the evidence is not tainted by the witness's immunized testimony. Thevis, 665 F.2d at 640. Accord Turkish, 623 F.2d at 775 (discusses the practical problems involved). Before a court could grant judicial immunity upon a witness it would have to partake in a balancing of interests and a probing into traditional executive areas. See Turkish, 623 F.2d at 776-77. The Florida supreme court has recognized that a great number of factors must be considered when determining whether to grant a witness immunity, factors more suitable for the executive branch to weigh. In Tsavaris, the supreme court recognized that the application of immunity requires hard judgments on close questions:

Before taking the untraceable step of immunizing a putative offender, the prosecutor must develop information from all other available sources and carefully weigh probabilities.
360 So.2d at 749. The balancing of the competing interests involved in an immunity decision is not an appropriate judicial function, but rather is a function especially suitable for a prosecutor. See Turkish, 623 F.2d at 776-77.
[12] Cf. supra note 6.
[13] The two most common arguments made under the due process clause concern: (1) the "unfairness" of the state presenting testimony from immunized state witnesses while refusing to grant defense witnesses immunity; and (2) the denial of defense witness immunity thwarts the concept of a trial as a search for the truth. The court in Turkish adequately discusses these arguments and finds them to be without merit. 623 F.2d at 774-77. We find no reason to repeat that discussion here.